to appeal number 21-3200. This is Barbara Lukaszczyk v. Cook County. We are going to have a number of similar players. We're just having individuals, Mr. Lubin, take the table here. Yeah, I am ready. All right. Thank you, Judge. Mr. Lubin, I'll recognize you now for appellant's argument in the Lukaszczyk case. Sorry, I jumped the gun. Thank you, judges. May it please the court, counsels. So here I want to focus a little bit more on an issue that's not entirely unique, but to some extent is unique to the Lukaszczyk case, which is the question of free exercise of religion. Because in this case, what happened was Cook County created its policy, and their policy initially was- Mr. Lubin, before you go down that route, can I ask a clarifying question, please? Absolutely. On your free exercise claim and in your other claims as well, are you bringing in a facial challenge or an as-applied challenge? As it relates to the free exercise claim? In this case, yes. As it relates to the free exercise claim, it's an as-applied challenge. With respect to- Because that's not clear. That wasn't clear to me from reviewing your request for relief and your complaint before. Are you bringing an as-applied, are you bringing a facial challenge at all, or are you just bringing an as-applied? Judge, I don't know that there can be a facial challenge when there doesn't seem to be a clearly articulated policy. The policy was entirely as- So are you, you're the master of your complaint. I'm just trying to clarify what your theory of recovery is under the free exercise clause. So are you bringing a facial challenge here based on the free exercise clause or just an as-applied? Just an as-applied challenge, Judge. To my knowledge, and I realize it sounds funny to say that, but one of the problems here, Judge, is that there was no clearly articulated policy. And if there is no clearly articulated policy, what can be challenged on the face? The question is, do they give themselves discretion, which they clearly did through their actions, do they give themselves discretion to issue a request for an accommodation on a religious basis for an accommodation and secular basis for an accommodation? In this case, what the county did basically is they issued their edict. Everyone has to vaccinate. In this case, everyone has to vaccinate or they lose their jobs. And then they said, but if you have a request for an accommodation, by all means, come forward with your request for an accommodation. A number of people came forward with medical requests for an accommodation, and I think in every single one of those, at least according to the county, the reason for the medical request for an accommodation was because the person had a very bad reaction to the first dose of either the Pfizer or Moderna vaccines and therefore didn't want to have to take a second dose. And by the way, there may be some fodder there for the substantive due process arguments when we talk about the risks associated with vaccination, but those were granted. But then there was another one that was granted, which is very interesting. An individual who evidently was taking part in a double-blind study was granted an accommodation. He didn't have to specifically vaccinate because otherwise it would invalidate his participation in the double-blind study about vaccine efficacy. And by the way, it's a wonderful thing to take part in the double-blind study of vaccine efficacy. It's an important thing. But if the government sits there and says, and by the way, before we get to, because I know there's probably going to be questions about Doe v. Mills and We the Patriots, in each of those cases, there were specifically articulated policies about what fell under the accommodation and what didn't. I'm not crazy about the rulings there, but they're different than Dole and they're different than the case here without a doubt. There were specifically articulated policies about what falls under the accommodation and what doesn't. In those cases, there was no such thing as a religious accommodation. Here there was. Come forth with your accommodations. And when the county sets itself up as arbiter over what's more important between a person's religious decisions and this individual's double-blind study, that's what violates the First Amendment. Mr. Lubin, thank you for getting into this and focusing on the free exercise. Let me ask you this. Tell us what more the record provides with respect to the individual and the efficacy study. All I know is, or all I can discern from the record, is that they given a medical exemption and they're allowed to work, quote, on site. Does the record tell us anything more? No, it doesn't. And I'll tell you exactly why the record doesn't tell you anything more, Judge. I took depositions of individuals from the county in order to determine what was the rule, what was the basis for the rule, how was the rule applied. And when I took those depositions, the only individual who came forth who claimed to have any knowledge of the specific applications of the rule referred to the 10 individuals, at that point I believe it was 10 individuals, who received an accommodation on the basis of the fact that they'd gotten one vaccine. I was not informed of the individual who took part in the double-blind study. The way I was informed of that individual is that later on during motion practice, an affidavit referred to that individual. So despite the fact that there was an opportunity... This is Tim Hoppe you're talking about. Timothy Hoppe. Correct. Yeah, okay. So the reason I want to focus you on that is, in your judgment, does it make a legal difference? I'm going beyond the record. I'm hypothesizing. Does it make a legal difference whether the person in the efficacy study works alone in the mailroom versus works as a surgical nurse? Does it make a difference in the free exercise analysis? It potentially does. And the reason it potentially does is that if DAL applies the way I believe it does, and if Fulton versus City of Philadelphia applies the way I believe it does, that doesn't foreclose the question. By the way, just like rational basis doesn't foreclose the question. It provides the parameters for the question. The question would be then analyzed under strict rational basis test. I think you're onto something there, but here's my question for you. On appeal here is the denial of a preliminary injunction. Your clients were the ones that sought that. Aren't they under an obligation to fill in, especially on the likelihood of success problem, the missing what may be material fact as to what is this person doing on site? Judge, if the other side doesn't participate appropriately in discovery, that's not my failure and that's not my client's failure. But it's not the appellate court either. It's that you should take that up with the district court because you could say there's a material fact to a very serious claim under the United States Constitution. I need to know what the person's doing. I don't need to know their first and last name, their address, or anything else, but I need to know what they're doing because if they're in contact with patients, etc., etc., it seems to me that your client's free exercise clause claim gets stronger, not weaker. If they're working in the mail room or on the loading dock alone, maybe not. I think that's correct to an extent. Judge, don't get me wrong. If your ruling says Mr. Lubin was right about literally everything, he wins the entire case. Have a nice day. I'll be very happy. But if what this court does is say that there is a strict scrutiny test that has to be applied to the facts, go back down and get into the facts. And by the way, county, you have to actually the facts. I can live with that. That's not a bad ruling for me, Judge. Well, we're not bartering about an outcome. My only point is that you brought a motion, and I'm not sure the evidence is there on the critical issue that you've got your finger on, to your credit. Now, the fact that you lost a motion or your client's lost a motion doesn't mean the litigation, writ large, has gone away. There's still a case pending. Absolutely. But, Judge, the point I'm trying to make here is that the reason that there are facts missing is because the county didn't provide those facts, despite the fact that they were asked. Well, Mr. Lubin, I don't know that we can accept that. I mean, you've got the federal rules are legion with discovery requests that you can make, oral, written, 30B6. You can individuals on the record. I don't know that we can accept a blame shift to the other party when the same rules were available to both sides for purposes of discovery. Judge, of course you can. If I ask the questions of a witness under oath at a deposition, and the witness answers those questions incorrectly and then surprises me with an affidavit once we get into motion practice, I've been deprived of an opportunity to ask him the question. I think that's the point, that if you believe there's been a discovery violation, you bring it up with the district court through a motion to compel, a motion to strike, or otherwise. And it doesn't seem from looking at the record that you brought anything up with respect to this issue that you're claiming you didn't get discovery on. Then, Judge, what we have here is an answer that the district court used the improper standard. They used essentially a rational basis standard to analyze the facts. They should have used a scrutiny standard. No, I think what we have here is that you didn't present the facts to the district court that you're trying to get us to accept here. The question about the standard isn't impacted by these facts. The question about the standard... Oh, no, no, no. Hold on. Hold on. Okay, that's the leap because it looks neutral and generally applicable on the preliminary injunction record. Okay, now if we change the record or it gets further developed, and you're able to show what we knew at the preliminary injunction stage that this individual is working, quote, on site, means that they're working as a surgical nurse, or a zillion other possibilities where they're having contact with people. They're not in the back room in the loading dock. You can litigate that because then everything that you're saying is a substantive matter about, well, why are they under the First Amendment? Well, that gets a lot more serious. Understood. I would submit that. I disagree about whether the facts impact what standard should have been used. What standard should have been used if we're treating religious accommodations and secular accommodations differently on the basis that they're secular or religious, and that's what happened here. It wasn't based on any of those facts. It was based, as Mr. Hapa said, on the fact that this is how we dealt with religious accommodate, and I see my time is up, but I want to answer your question. This is how we deal with religious accommodations, and this is how we dealt with secular accommodations, and in this case, we gave the person an accommodation because he was participating in a double-blind study, a completely secular basis for an accommodation. I don't know that they're going to say completely secular. They're just going to say medical exemption as a broad definition. That's secular. A medical exemption is secular. That's what it is. It's not religious. Mr. Lewin, I'll be giving you a brief time for rebuttal in this case. We're now going to move to argument from the appellee, and we're going to start with Ms. Scheller. Good morning. May it please the court. Assistant State's Attorney Jessica Scheller, arguing on behalf of Cook County Health and Hospitals, as well as Hectone Institute for Medical Research. There are three main points we would like to address with the court this morning, and the first is a procedural matter. We're before the court on review of the denial of a motion for preliminary injunction. The plaintiffs in this case failed to show irreparable harm, and they never even asserted in the district court that they lacked an injunction. The plaintiffs have not shown adequate remedy at law. The court may affirm on this basis alone, and the Supreme Court counsels that that may be a wise course of action under the doctrine of constitutional avoidance. Next, we turn to plaintiff's substantive constitutional claims, which are similarly infirm, where plaintiffs have not demonstrated a likelihood of success on the merits of either substantive due process, nor the First Amendment free exercise clause. I would like to point out that I was surprised to hear from plaintiff this morning that his claim is an as-applied challenge, because the record is absolutely devoid of any facts pertaining to how each religious exemption applied to his clients, and how it therefore violated the free exercise clause. It didn't seem that that's the way it was presented to the district court either. It seemed like it was presented or the district court understood it as a facial challenge. That was our understanding, but I would suggest that even if it was intended as an as-applied challenge, plaintiff's record is woefully inadequate to support such a finding. It looks like the case opens in the amended complaint as an as-applied challenge. It looks to me that way, but then the reason I say that is because of the way the free exercise claim is pled, and in the prayer for relief, there's a request for a finding or declaration that the rights of the plaintiffs have been violated, but then I think you're right, it falls by the wayside at the preliminary injunction stage entirely. It almost looks like it proceeds as facial litigation. That was the record that was presented to us, or that is our position, that the plaintiff has not established an as-applied challenge, or excuse me, the plaintiffs have not established an as-applied challenge for any plaintiff, much less all of them. And in terms of the relief they were asking for, they were asking to strike it in its entirety. It seemed like a facial type relief as opposed to just individual. That was our assessment as well. Was there any evidence put in? Are you disputing the fact that each of the plaintiffs here applied for and denied, were denied a religious exception? We do dispute that. We do not dispute. Which, and I'm sorry, that was a double question. I dispute the latter clause. That they were denied a religious exception. Correct. Is it undisputed that each, because it's a little hard to tell, that each of these plaintiffs actually applied for a religious exception? We do not dispute that the plaintiffs applied for a religious exemption, nor does Cook County Health or Hectone challenge the sincerity of their religious beliefs. The problem that we have here is these exemptions were granted. The plaintiffs were given 90 days of unpaid leave with which, through the Cook County Health and Hospital systems, they could have sought alternate, completely remote employment. The record is devoid of any facts that any plaintiff attempted to do so and failed. The only mention of it is at Plaintiff's Reply Brief at 41, where he makes a statement that the county defendants acknowledged there were no such positions, but there is no cite to the record, and we posit that the depositions do not support that statement. Do we know any more than I was, we were talking about with Mr. Lubin, about the individual that's in the medical study, the efficacy study? Your Honor, we do not. I apologize. In the record. I'm not asking anybody to go beyond the record. There is nothing in the record on that point. And while the court has already highlighted this, we would note that Mr. Lubin did not seek to redepose Mr. Hubba or ask any additional written discovery questions. There was no Rule 37 correspondence on this point, no motion to compel. You know, we were learning for the first time that he was dissatisfied with the amount of information on appeal. But your point is that if he said, look, I don't need to know any, I don't need to know any privacy protected information. I just need to know the nature of the person's work on site. I need to know whether they, in my, you know, come up with any example you want. Do they work in the mail room? What do they do? That would certainly be discoverable. That's not information that I have right now. No, no, I'm not asking you, I'm not asking you for the answer. I mean, the record is what it is. But the point is that wasn't part of the discovery process in the district court. Correct. So all we know is that the person, quote, works on site. Correct. But going further and returning to the substantive due process analysis, the Supreme Court's holding in Jacobson is controlling here. And it was recently applied by this court in Klassen, where it was noted that there's not a fundamental right to avoid vaccination. And while the plaintiffs try to use Roe versus Wade and Planned Parenthood versus Casey to distinguish this line of precedent, the Supreme Court counsels in Rodriguez that even if it appears that there is a different line of reasoning in their precedent, it is up to the Supreme Court and only the Supreme Court to determine which of its precedents should be struck down. So I would suggest that this court can set aside Roe and Casey in its analysis. How does the fact that the plaintiff didn't put in the record whether or not they exercised their right under the exemption impact the substantive due process analysis? I think it goes further to the First Amendment free exercise analysis, which is... I'm sorry. If the plaintiff is, in fact, asserting an as-applied challenge and they were offered an exemption and did not avail themselves of the exemption, how then can they claim that this policy was unconstitutional to them as applied? They didn't take the steps associated with the exemption and instead sat back and said, we'll wait the 90 days, await separation, and proceed with legal claims. Would it also impact the irreparable harm prong of the preliminary injunction analysis? Yes. I did want to note that my opponent brought up both the Doe and the We the Patriots cases, which I think are particularly important here as we're analyzing the differences between medical and religious exemptions. I don't think I need to belabor that too much because the court is fairly well focused on it, but I do think that the First and Second Circuits grappled with these distinctions and provided a fairly sound analysis. Which would counsel in favor of upholding the vaccination mandate. Finally, I would just like to note that neither procedural due process or the HCRCA apply here. The plaintiff didn't spend a great deal of time on that in his opening remarks, but there simply isn't any precedent which suggests that the Healthcare Right of Conscious Act would apply in this context. And indeed, the opposite is true. The General Assembly has passed a mandatory language, not amending the meaning of the statute, but providing additional guidance and interpretation, which will be effective July 1 of 2022, stating that it is not intended to apply to COVID mitigation. July 1 or June 1? I'm sorry, I misspoke. It's June 1. OK. Thank you, Ms. Scheller. Thank you. We're now going to move to further argument on behalf of the appellee from Mr. Bissett. Two minutes. May it please the court. I'm going to begin by addressing the one issue in terms of the governor that's specific to this case, and then I'll turn back to the substantive due process and any other topic that your honors want to discuss. But the one issue that is specific to this case is standing. The plaintiffs, another reason why a preliminary injunction should not be their claim against the governor. In this case, there was discovery, and every plaintiff who was asked about whether or not they would be willing to comply with the testing part of the mandate said that they were. And so to the extent that there is any injury that the plaintiffs have suffered has been as a consequence of the county's policy and not the executive order. Turning back to substantive due process, I agree with everything the counsel for the said. I would just also add on the Roe and Casey point that there is no conflict between Roe and Casey on the one hand and Jacobson on the other to begin with, because Roe and Casey actually cited Jacobson in support of the twin points that just as individual liberty interests are not absolute, the state power to regulate them is not unlimited. So while it's true that if there is some tension, this court needs to follow Jacobson, which is the more on-point precedent. The Roe and Casey and Jacobson are not in conflict to begin with. When it comes to applying the rational basis standard, the vaccine and testing requirements satisfy rational basis review because they are targeted measures that apply to the health care context where the risks posed by COVID-19 are especially serious, and these types of vaccine requirements are fairly commonplace. That last point figured prominently in the Supreme Court's decision in Biden, where the court pointed out that by being a health care worker, you often have to, are required to receive vaccines for various different diseases. And so the specific context in which this executive order applies just further illustrates why there is a rational basis and the executive order passes that level of scrutiny. So unless your honors have any further questions. Thank you, Mr. Bezat. Mr. Lubin, I'd like to give you two minutes now for rebuttal on the Lukasik case ending 3200. Thank you. Thank you very much. I appreciate the two minutes. A couple quick things, and then I'll go back to what I was talking about before. One of the things that I wanted to get to, when it comes to the irreparable harm analysis, particularly when there's a First Amendment right at issue, if there's a First Amendment right that's implicated, that is the irreparable harm that's been noted in a number of cases that I cited. But I will note that there was a motion to cite additional authority that was filed by my opponents a couple weeks ago. And that one brought together employees versus Mass General Brigham. And at the very end of it, it's very clear, this is a Title VII case. And at the end, it says, opponents aren't bringing a free exercise clause case. They're bringing a Title VII case. And so therefore, there's no irreparable harm. But there would have been in the free exercise case. That's where we are here. In terms of the legal remedies, reinstatement is an equitable remedy. That is the remedy. That is an equitable remedy that we'd be seeking. At the end of the case, it's the equitable remedy that we're seeking now. So we absolutely did address that. That's the remedy we were seeking. As to the question about whether I'm bringing a facial challenge or an as-applied challenge, I maintain, and I think I've been consistent, and I apologize if it was confusing. But I maintain that there hasn't really been a written policy. There hasn't been a clear policy. All there is is application. And they're kind of shot from the hip in terms of the application. At one point saying, if you've ever taken the flu shot, then clearly you don't have a genuine religious belief because you're being inconsistent. And then saying, no, that's not what we're going to do. Really, what we're going to do is we're going to approve your accommodation. And the approval is you don't get to work and you don't get to make any money. And when we approve someone's secular accommodation, the approval is that they do get to work and they do get to make money. And there was no, you know, in my deposition, you can read it, no distinction made based upon what the person's job was, if it was on-site or not. Finally, it was the HAPA deposition where he says very, very clearly, and I cited it, you know, I cited verse and line in my brief, and I missed the page. He said very, very clearly that no one who applied for a remote position was given a remote position. There weren't any. Thank you, Mr. Lubin. That will complete the argument in case number five, appeal 21-3200.